Glen E. ZUMWALT,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 89–3173.

United States Court of Appeals,
Tenth Circuit.

March 20, 1991.

Marlys A. Marshall and Andrew W. Hutton, Michaud, Hutton & Bradshaw, Wichita, Kan., for plaintiff-appellant.

Benjamin L. Burgess, Jr., U.S. Atty., and Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant-appellee.

Before LOGAN, JONES,* and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Glen E. Zumwalt appeals the district court's order entering summary judgment in favor of the United States. Zumwalt brought an action for damages against the government under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. The district court granted the government's summary judgment motion based on the discretionary function exception to the FTCA. *See* 28 U.S.C. § 2680(a). Zumwalt argues that the district court erred in finding that the government's actions fell within the scope of the discretionary function exception. We affirm the district court's decision.[1]

The facts of the underlying action are set forth in detail in the district court's order, *Zumwalt v. United States,* 712 F.Supp. 1506, 1508–09 (D.Kan.1989); we will only summarize those pertinent to our review. Zumwalt and his family visited Pinnacles

---

* The Honorable Nathaniel R. Jones, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

National Monument (Monument) in California and went hiking on the Balconies Cave Trail (Trail). The Monument, located on 16,000 acres of land, is operated by the National Park Service and has been designated a wilderness area pursuant to the Wilderness Act, 16 U.S.C. §§ 1131–1136.[2]

The Zumwalt family proceeded along a portion of the Trail that leads through some talus caves formed by large boulders falling into a narrow canyon. Markers along the Trail correspond to a point of scenic interest described in a Park Service pamphlet. While hiking on the Trail, Zumwalt and his family became confused as to which direction the trail went. Zumwalt saw a number of footprints to his left and went ahead to check out this possible route. He then called to his family to come along.

While waiting for his family, Zumwalt saw a large shadowed area a few steps to his right. Wondering whether the area was an entrance to the caves or just an alcove, he stepped into it while reaching toward the back to see if he felt rock or open space. As he reached and stepped in, he slipped on loose gravel and fell. He slid down an incline, through the roof of a cave, and landed on the cave floor, severely and permanently injuring himself.

Zumwalt filed suit against the government, alleging that the United States, through the National Park Service, "negligently owned, maintained, controlled, inspected or failed to inspect, managed and operated ..." the Monument. I R. tab 1 at 2. The government responded with a summary judgment motion, asserting that the district court lacked subject matter jurisdiction under the discretionary function exception. The district court granted the mo-

tion, holding that the government's alleged negligence involved protected policy judgments. See Zumwalt, 712 F.Supp. at 1513.

Initially, it should be noted that a challenge to subject matter jurisdiction should be brought under Fed.R.Civ.P. 12(b)(1) rather than under Rule 56. This procedural obstacle is inconsequential, however, because we review a district court's decision under both rules de novo. Weiss v. United States, 889 F.2d 937, 938 (10th Cir.1989) (district court's subject matter jurisdiction determination reviewed de novo); Barnson v. United States, 816 F.2d 549, 552 (10th Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987) (district court's summary judgment determination reviewed de novo).

■ The FTCA waives the sovereign immunity of the United States in cases involving negligence by government employees. The FTCA provides for suits against the United States for damages

"for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b). This waiver of immunity is limited, however, by what is referred to as the "discretionary function exception." The discretionary function exception relieves the United States of liability for "[a]ny claim ... based upon the

---

2. A wilderness area is defined by statute as follows:

"A wilderness, in contrast with those areas where man and his own works dominate the landscape, is hereby recognized as an area where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain. An area of wilderness is further defined to mean ... an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvements or human habitation, which is protected and managed so as to preserve its natural conditions and which

(1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined type of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, educational, scenic, or historical value."

16 U.S.C. § 1131(c).

exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

At issue in most cases in which the discretionary function exception is invoked is the scope of this exception. In 1988, the Supreme Court attempted to clarify the scope of the discretionary function exception in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct.1954, 100 L.Ed.2d 531 (1988). The *Berkovitz* Court articulated a two-step procedure to guide courts in analyzing the exception's scope.

First, a court must consider whether the challenged conduct "is a matter of choice for the acting employee" or whether it is specifically prescribed by a federal statute, regulation, or policy. *Id.* at 536, 108 S.Ct. at 1958. "[I]f the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Id.*

Second, if the employee's conduct is the product of judgment or choice, "a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* The discretionary function exception was designed "to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 536–37, 108 S.Ct. at 1959 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)). Therefore, under the second part of the test, a discretionary decision is only protected if "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. at 1959.

Zumwalt first argues that the discretionary function exception does not apply because the Park Service failed to follow its own policy judgments. He contends that the Park Service made two policy judgments: (1) the decision to construct the Trail and erect safety devices and signs in the talus caves area;[3] and (2) the decision

---

3. The "Management Policies" promulgated by the Park Service relating to the Trail provide generally that:

   "Wilderness areas shall be administered for the use and enjoyment of the American people in such manner as will leave them unimpaired for future use and enjoyment as wilderness, including 'outstanding opportunities for solitude or a primitive and .unconfined type of recreation.' Thus, the preservation of wilderness character and values is the prime administrative responsibility of the [National Park] Service, and activities to achieve other legal purposes of areas designated as wilderness must be administered so as to preserve the wilderness character. The public purposes for which park wilderness shall be managed relate to recreational, scenic, scientific, educational, conservation, and historical uses."

   I R. tab 21, Exh.C at VI–1.

   The Management Policies also contain more specific provisions concerning wilderness use, wilderness management, and management facilities. These sections provide in pertinent part:

   "The visitor must accept wilderness largely on its own terms. Modern conveniences are not provided for the comfort of the visitor; and the risks of wilderness travel, of possible danger from accidents, wildlife, and natural phenomena must be accepted as part of wilderness experience.

   ... [P]rotection of the wilderness character is essential to the quality of the park experience.

   ....

   In the management of wilderness resources and of wilderness use, the Service will use the minimum tool necessary to successfully, safely and economically accomplish its management objectives. When establishing the minimum tool, economic factors should be considered the least important of the three criteria. The chosen tool or equipment should be the one that least degrades wilderness values temporarily or permanently....

   Wilderness is defined, in part, as undeveloped Federal land retaining its primeval character and influence, without permanent improvements. Facilities are permitted only as necessary to meet the minimum requirements for the administration of the wilderness. area.

   ....

   Narrow, unpaved foot and horse trails are permissible. Trails intended for foot travel only will be maintained, generally, to a width sufficient for persons to walk single-file....

   ....

   Fencing and hitching racks are permitted only where essential for protection of the resource.

   ....

that the Trail posed unacceptably high risks to visitors and that improvements to the Trail would be made to protect the safety of visitors.[4] Although Zumwalt concedes that the promulgation of the Management Policies and the Project Statement by National Park Service personnel is protected by the discretionary function exception, he contends that their implementation of the policies is not protected because the implementation does not require the exercise of any choice or judgment.

Zumwalt points to *Berkovitz* to support this contention. In *Berkovitz*, the National Institute of Health's Division of Biologic Standards allegedly failed to follow specific statutory and regulatory directions in licensing a vaccine. Plaintiff subsequently was injured by the vaccine. The Supreme Court, reversing a dismissal of the plaintiff's suit, held that the discretionary function exception did not bar suit if the guidelines left the Division of Biological Standards with no discretion in the procedure for licensing drugs. *See Berkovitz*, 486 U.S. at 546–48, 108 S.Ct. at 1964–65.

> Signs and markers may be provided only where they are necessary for visitor safety, management, or resource protection."
> *Id.* at VI–4 to VI–9.

**4.** The December 1983 revision of the Management Plan prepared by the Superintendent of the Monument contains a "Natural Resource Project Statement" concerning Trail improvements, which provides as follows:

> "1. PINN–RM–4–BALCONIES CAVE TRAIL IMPROVEMENT
> 2. *Statement of Problem or Issue:* A trail has been constructed through the Balconies Caves. However, there are still a few places where visitors, even with adequate lighting, have missed a turn, fallen several feet, and been seriously injured.
> *Current Actions and Results:* The trail receives cyclic maintenance and has been improved recently along several stretches. Warning signs stressing the hazardous nature of the caves have been installed. Warnings are also in the park minifolder. These actions have reduced injuries, as well as complaints related to the difficulty of finding the trail. However, injury and complaint levels are still unacceptably high.
> 3. *Alternative Actions and Likely Impacts:*
> A. *No further action*—The cave is currently passable and the majority of visitors receive an enjoyable experience. The several serious accidents and complaints each year would continue.

We do not believe that *Berkovitz* supports Zumwalt's claim. National Park Service personnel retain substantial discretion under the Project Statement and Management Policies. To implement the Project Statement, Park Service personnel must first determine which sections of the Trail have proven to be hazardous or difficult to follow. The Project Statement does not provide any direction on how this determination should be made. Once a hazardous section is identified, Park Service personnel must determine what type of improvements to make and where the improvements should be located based on wilderness policy and the need for public safety. Further, the Project Statement contains no time frame for implementing the recommended action. These factors demonstrate the need for individual judgment by Park Service employees. The Management Policies provide for a similar exercise of discretion. Only general guidelines are specified. Therefore, Zumwalt's argument that the conduct at issue did not involve an exercise of judgment or choice must fail.

> B. *Install a paved trail*—This would reduce visitor injuries and would eliminate complaints about not finding the way. However, the cave is within the park's wilderness and this would not be a compatible action.
> C. *Install lights throughout the cave*—This would have approximately the same results as Alternative B, but is not compatible with the cave's wilderness designation.
> D. *Close the cave*—The cave is an important geologic feature of the monument and a major visitor attraction. Closure would result in strong negative public reaction. Without major alteration of the cave structure, closure would be virtually unenforceable due to the many openings.
> E. *Upgrade hazardous portions of trail*—Those sections which have proven to be hazardous or difficult to find will be improved using native material and concrete. The location and type of improvements will be dictated by wilderness policy and the need to provide for public safety.
> 4. *Recommended Action:* Since the cave is in a wilderness area, management actions will be held to a minimum. Visitor safety will be improved by using native material and concrete for those sections of the trail that have proven to be hazardous or difficult to follow.
> 5. *FY 1983 Update:* This project will be completed by the trail crew funded under 10–237B 35."

I R. tab 21, Exh.D.

Zumwalt next argues that the discretionary function exception does not bar suit under the second step of *Berkovitz.* He asserts that the Park Service's failure to warn visitors of known hazards along the Trail was a decision that must be considered separately from the analysis above. Under such an evaluation, Zumwalt contends, the discretionary function exception does not apply because the failure to warn did not "implicate any social, economic, or political policy judgments." *Boyd v. United States,* 881 F.2d 895, 898 (10th Cir.1989).

We agree that Zumwalt's failure to warn claim should be considered separately from the alleged failure to implement the Management Policies or the Project Statement. *See Boyd,* 881 F.2d at 897–98, 898 n. 3; *Smith v. United States,* 546 F.2d 872, 876 (10th Cir.1976). Despite this separate treatment, however, the failure to warn claim still may be a policy decision or part of a policy decision protected by the discretionary function exception. As indicated in *Berkovitz,* any discretionary decision is protected by the discretionary function exception if the decision was grounded in social, economic, or political judgments. *See Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. at 1958–59. *See also Boyd,* 881 F.2d at 898.

In the instant case, the absence of warning signs was part of the overall policy decision to maintain the Trail in its wilderness state. The Management Policies provide that the wilderness areas will be administered "in such manner as will leave them unimpaired for future use and enjoyment as wilderness...." I R. tab 21 at VI–1. Further, they provide that visitors must accept wilderness areas as they find them and that the Park Service will use the minimum tools necessary to maintain safety without destroying the primeval character of the area. The Park Service, in choosing to mark the Trail and place warnings in a corresponding pamphlet, under-

took a balancing of social, economic, and political policies. Therefore, the exercise of discretion in determining what safety measures to implement also is shielded from judicial review by the discretionary function exception.

In relying on this court's decisions in *Smith* and *Boyd,* Zumwalt asserts correctly that in each of those cases we held that the failure to warn of hazardous conditions did not involve any social, economic, or policy judgment. *See Boyd,* 881 F.2d at 898; *Smith,* 546 F.2d at 877. Zumwalt is mistaken, however, in contending that *any* failure to warn falls outside the scope of the discretionary function exception. In both *Smith* and *Boyd,* the government's failure to warn was not connected to the policy decision which created the hazard. In *Smith,* the decision not to post warning signs near thermal pools was not connected to the decision to leave the area undeveloped.[5] *Smith,* 546 F.2d at 876–77. In *Boyd,* the alleged failure to warn swimmers of dangerous conditions was not shown to be part of the policy decision not to zone a particular area.[6] *Boyd,* 881 F.2d at 898. Unlike the decisions not to warn in *Smith* and *Boyd,* the decision in the instant case not to place additional warnings on the Trail cannot be divorced from the policy decision to maintain the area in its wilderness state; it was a "branch of the same tree." The decision to leave the Trail in its wild state, whether explicit or implicit, related directly to the overall scheme set out in the Management Policies. That overall scheme directed the Park Service to maintain the Monument in its natural state. A decision that is a component of an overall policy decision protected by the discretionary function exception also is protected by this exception.

The case at hand is not unlike *Miller v. United States,* 710 F.2d 656 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983), and *Weiss v. United*

---

**5.** In fact, a ranger testified that the absence of warning signs was not related to any policy decision but to a perceived lack of need for warning signs. *Smith,* 546 F.2d at 877 n. 5.

**6.** The *Boyd* court noted that even the dissent in that case "fail[ed] to point out what public policy considerations possibly could be involved in the [government's] decision not to warn snorklers or swimmers of known dangers...." *Boyd,* 881 F.2d at 898 n. 3.

*States,* 889 F.2d 937 (10th Cir.1989). In *Miller,* plaintiff sued the government for failing to place warning signs and guardrails along a stretch of road constructed pursuant to government specifications. This court held that such a failure was protected by the discretionary function exception, finding that the statutory directive to fashion a highway in the "best overall public interest" was infused with such a "welter of public policy considerations" as to fall within the discretionary function exception. *Miller,* 710 F.2d at 665. In *Weiss,* we held that the failure to remove a tramway cable or make it more visible could not be separated from the discretionary decision to adopt the FAA policy on ground objects. *Weiss,* 889 F.2d at 939–40. We believe the decision not to place warnings along the Trail was part of the policy decision to maintain the Monument in its natural state.

Zumwalt also argues that his claims against the government are based on its acts or omissions as a landowner, and that in *Boyd* and *Smith,* "this Court held that when a defendant's claims are premised on the direct acts or omissions of the Government, as a landowner, the claims are not barred by the discretionary function exception." Brief of Appellant at 21. In making this argument, Zumwalt misconstrues our holdings in *Boyd* and *Smith.*

The government's status as a landowner does not create a special type of discretionary function case or alter the exception's application in any way. Rather, the landowner status merely establishes the source of liability for the government in the event that the discretionary function or some other exception to the FTCA does not apply. When a plaintiff sues the government for injuries arising from an accident caused by a government driver, the laws of the state in which the accident occurred concerning a driver's duty of care will govern the plaintiff's claims under the FTCA. Similarly, when a plaintiff sues the government for injuries arising from a hazardous condition maintained on property owned by the United States, the laws of the state in which the accident occurred con-

cerning a landowner's duty of care will govern the plaintiff's claims if he can sue the government under the FTCA.

In sum, because the conduct plaintiff challenges in this action involved "the permissible exercise of policy judgment," the United States is insulated from liability. *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959. Were we to hold otherwise, the district court would have to substitute its judgment for that of the National Park Service as to what safety precautions are warranted in light of the need to preserve the wilderness character of the Monument. Such judicial "second-guessing" of policy judgments is what the discretionary function exception was designed to prevent. *Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2767.

AFFIRMED.