1998 DSD 20

**Jeffrey L. WHALEN, Sr., individually and as Administrator of the Estate of Jeffrey L. Whalen, Jr., deceased, and Dalone R. Brewer, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ. 98–5022.**

United States District Court,
D. South Dakota,
Western Division.

Aug. 10, 1998.

Charles Thomas Abourezk, Abourezk Law Offices, Rapid City, SD, for Plaintiffs.

Diana Ryan, Bonnie P. Ulrich, U.S. Attorney's Office, Sioux Falls, SD, Matthew L. Zabel, U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, Chief Judge.

### PROCEDURAL HISTORY

[¶ 1] On March 3, 1998, plaintiffs filed a complaint under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.*, to recover for the death of Jeffrey L. Whalen, Jr. (Whalen) in the Badlands National Park which is operated by the National Park Ser-

vice (NPS). On May 22, 1998, defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), lack of personal jurisdiction and failure to state a claim, respectively. On June 23, 1998, plaintiffs moved for an order to convert defendant's motion to dismiss into a motion for summary judgment. Plaintiffs also requested additional time for discovery in the event the Court did convert to a Rule 56 motion.

[¶ 2] Jurisdiction is based upon 28 U.S.C. § 1331, federal question, involving the interpretation of the FTCA.

## FACTS

[¶ 3] In the evening hours of March 17, 1996, Whalen was the passenger in a vehicle that ascended a road to Sheep Mountain Table which is located in the South Unit of the Badlands National Park near Interior, South Dakota. The dirt road leading up to Sheep Mountain Table is allegedly well traveled. Complaint at 2. Once at the top of the table, Whalen exited the vehicle and walked a short distance where he fell approximately 300 to 400 feet. Whalen died as a result of injuries suffered from the fall. There were no warning signs posted in the area and no gate prevented access to the road leading up to the top of the table. Whalen was 17 years old at the time of his death.

## DISCUSSION

### [¶ 4] A. Conversion of the Motion to Dismiss

[¶ 5] The first issue for resolution is plaintiffs' motion to convert the motion to dismiss to a motion for summary judgment. Plaintiffs contend that since the Court is considering material outside the pleadings the motion to dismiss under 12(b)(1) and 12(b)(6) must be converted to a motion for summary judgment. This is a correct statement of the law as it pertains to Rule 12(b)(6) motions [1] but not for 12(b)(1) motions. Since

1. Rule 12(b) itself states in part that:

   If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity

the Court finds in defendant's favor on the 12(b)(1) motion the merits of the 12(b)(6) motion and consequently the motion to convert it into a motion for summary judgment need not be addressed.

■ [¶ 6] *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), authorizes a court to look to evidence outside the pleadings when determining a Rule 12(b)(1) motion based upon a "factual attack." [2] The court in *Osborn* went on to indicate that:

> It is "elementary," the Fourth Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Id.* at 729. Moreover, in a factual attack the plaintiff bears the burden of showing that jurisdiction does exist. *Id.* at 730 n. 6 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). *Osborn* sets forth one instance when the court should not consider outside information. *Id.* at 730. When a "jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue[,]' a court should not consider information outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(1)." *Id.* (quoting *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

■ [¶ 7] The Court does not find that the jurisdictional issue is so entwined with

to present all material made pertinent to such a motion by Rule 56.

2. A "factual attack" differs from a "facial attack." *Osborn,* 918 at 724 n. 6. The latter involves only the examination of the face of the pleadings whereas a factual attack allows the court to consider matters outside the pleadings. *Id.* at 730 n. 6 (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980)).

the merits that the issue cannot be resolved absent a trial. As will be discussed shortly, the central issue in determining the 12(b)(1) motion is whether the NPS had the discretion to determine what safety precautions to implement at Sheep Mountain Table. If it was a discretionary decision, then the FTCA waiver of immunity is not applicable and the Court is without jurisdiction. *See United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). The lynchpin of such a determination is the presence of federal statutes, guidelines, or policies which mandate certain conduct. *Id.* This inquiry differs from the merits of plaintiff's negligence claim against the defendant and is not so enmeshed that a trial on the merits is required. The Court may thus proceed to examine matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment. Accordingly, plaintiff's motion to convert is denied.

### [¶ 8] B. Discretionary Function Exception

██ [¶ 9] Having determined that defendant's motion for lack of subject matter jurisdiction need not be converted into a motion for summary judgment the Court now turns to the discretionary function exception to the FTCA's waiver of sovereign immunity. Enacted in 1948, the FTCA waives sovereign immunity and allows individuals to sue the government when a government employee commits a tort. *See* 28 U.S.C. § 2674 (1994). There are, however, several exceptions to the FTCA which limit the extent of immunity. *See generally* 28 U.S.C. § 2680. One such exception dubbed the discretionary function exception provides as follows:

> [¶ 10] Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). If applicable, the discretionary function doctrine maintains sovereign immunity and thus deprives a court of jurisdiction.

██ [¶ 11] The Supreme Court has set forth a two-part standard for determining when the discretionary function exception applies. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). The first prong requires that the conduct in question must "involve an element of judgment or choice." *Id.* There is no judgment or choice involved when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* 486 U.S. at 536, 108 S.Ct. at 1958–59. Therefore, to satisfy the first prong of the standard plaintiff must indicate the existence of a federal mandate. *Osborn,* 918 F.2d at 730 (noting that plaintiff has the burden of proving jurisdiction exists in a 12(b)(1) factual attack) (citing *Mortensen,* 549 F.2d at 891).

██ [¶ 12] If no federal mandate is established, thus making the action discretionary, the second element of the standard requires that the discretionary conduct be rooted in public policy. *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959; *Dykstra v. United States,* 140 F.3d 791, 795 (8th Cir.1998). In other words, the second prong works to protect "only governmental actions and decisions based on considerations of public policy." *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1274 (citing *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959).

### [¶ 13] 1. Federal Mandate

[¶ 14] It is plaintiffs' contention that Whalen's death was caused by the negligence of the National Park Service in not providing warning signs or other preventative precautions at or near Sheep Mountain Table. Complaint at 3–4. In opposing the motion to dismiss, plaintiffs exhaustively cited various NPS and Badlands National Park manuals and documents to establish that the decision not to post warning signs or provide other protective measures was in violation of federal mandate. Plaintiff's Brief in Response to Motion to Dismiss (Response) at 1–8. Specifically, plaintiffs rely upon language in *NPS–50, Loss Control Management Program Guideline* (NPS–50), *Management*

*Policies, U.S. Department of Interior, National Park Service, 1988* (Management Policies), *Badlands National Park Statement For Management,* March 1990 (Badlands Management), *Badlands, South Unit General Management Plan Revision Development Concept Plan Interpretive Prospectus* (Concept Plan); and *National Park Service Sign Manual* (Sign Manual).

[¶ 15]   a. *NPS–50*

■ [¶ 16]   Plaintiffs liberally quote from NPS–50 to support their claim that precautionary measures were mandated. Response at 1–5. The bulk of these quotations are on their face not mandatory as they address "objectives" and things that "should" be done to ensure the safety of park visitors. General statements on visitor safety have been held insufficient to satisfy the first prong of the discretionary function exception. *Tippett v. United States,* 108 F.3d 1194, 1197 (10th Cir.1997) (noting that broad safety statements are "too general to remove the discretion from [a government employee's] conduct"); *Autery v. U.S.,* 992 F.2d 1523, 1528–29 (11th Cir.1993) (indicating that general safety guidelines do not constitute federal mandates). Obviously, statements discussing what "should" be done cannot be considered mandatory. *Weissich v. United States,* 4 F.3d 810, 814 (9th Cir.1993).

[¶ 17]   Other language in the NPS–50 does indicate that certain requirements are mandatory. However, these mandatory requirements are very broad statements of general safety. For instance, Chapter 1 entitled "Authority, Policy and Responsibility" lists several program requirements such as general workplace conditions, proper supervision of employees, and proper training. NPS–50, Plaintiffs' Exh. 2A at 1–2. Plaintiffs hone in on one particular clause which indicates that managers and supervisors are to "[t]rain employees and supervisors to recognize unsafe and unhealthful work practices and conditions, take appropriate corrective actions and know and follow safety work rules and procedures." *Id.* at 2. Plaintiffs' reliance on such provisions is misplaced. These workplace guidelines are not relevant to the issue at hand, namely the precautions taken to protect the public at Sheep Mountain Table. Plaintiffs' reliance on provisions

requiring the reporting of dangerous conditions is equally off target as are references to Chapter 5 of NPS–50 which addresses NPS facilities (i.e., dorms, restaurants, and auditoriums). See Response at 2. Finally, Chapters 6 and 7 of NPS–50, upon which plaintiffs rely, concern the responsibilities of NPS employees to investigate and report on accidents occurring in the park. Response, Exh 2C and 2D. These chapters provide recommendations for ameliorating the risk of harm once made known but do not mandate specific conduct; thereby divesting park employees of any discretion.

[¶ 18]   Plaintiffs' reliance on NPS–50 falls short. The bulk of the document alludes to things which "should" be done. Those portions with stronger language primarily deal with matters of employee conduct and the work environment. In any event, nothing in NPS–50 can be construed as a federal mandate concerning the placement of signs and other precautions.

[¶ 19]   b. *Sign Manual*

■ [¶ 20]   Plaintiffs argue that the NPS Sign Manual mandates that signs be used wherever there exists a danger to the public or park employees. Response at 5. Closer examination of the Sign Manual indicates that the placement and usage of signs is a discretionary act. Chapter 1 of the Sign Manual starts out stating that "[I]t is intended that Park managers will utilize this Manual *as a guide* in the designing and ordering of all vehicular and pedestrian traffic control signing and other pertinent devices." Sign Manual, Defendant's Brief in Support of Motion to Dismiss (Defendant's Brief), Exh. A at 1–1 (emphasis added). Concerning safety signs the Sign Manual notes that for areas which may present a hazard "[t]he need for and placement of [safety signs] shall be carefully considered." *Id.* at 4–4. Several courts have likewise determined that the need for and placement of warning signs in national parks is a discretionary act. *See Blackburn v. United States,* 100 F.3d 1426, 1430–31 (9th Cir.1996); *Kiehn v. United States,* 984 F.2d 1100 (10th Cir.1993); *Valdez v. United States,* 56 F.3d 1177, 1197–80 (9th Cir.1995); *Zumwalt v. United States,* 928 F.2d 951, 954

(10th Cir.1991). This Court has little difficulty in finding that the Sign Manual does not constitute a federal mandate to post warning signs in this case.

### [¶ 21]   c. *Management Policies*

■ [¶ 22] The Management Policies manual, according to plaintiffs, provides further evidence that safety measure were nondiscretionary decisions. Plaintiffs use a quotation from a section of the manual entitled "Visitor Safety and Protection" which on its face is discretionary. Response at 6. Throughout this paragraph are sprinkled such terms as "will seek to provide," "strive to," "[w]here practicable," "efforts will be made to." *Id.* (citing Management Policies, 8:5–8:6. Gov't Exh. B). Such language does not indicate that park officials had no judgment or discretion in the matter.

### [¶ 23]   d. *Badlands Management*

■ [¶ 24] The Badlands Management manual contains guidelines specific to the operation and management of the Badlands National Park. Plaintiffs use one portion of this manual to help bolster their claim that the discretionary function doctrine does not apply. Plaintiffs contend that the management objectives portion which indicate that hazards are "to the greatest degree possible" to be made aware to visitors denotes a federal mandate to put up signs around the Sheep Mountain Table area. Response at 6–7. The Court interprets this provision less stringently than do plaintiffs. It appears that the language "to the greatest degree possible" is inherently discretionary and requires a balancing of factors by park officials.

### [¶ 25]   e. *Concept Plan*

■ [¶ 26] Plaintiffs spend a great deal of time pulling quotes from the Concept Plan in hopes of demonstrating that it provides a federal mandate. Much of the language upon which plaintiffs rely concerns the condition of the road leading up to the Sheep Mountain Table rendering the relevance of such statements suspect. Also, there is no indication when the proposed changes should be implemented nor by whom. Furthermore, the Concept Plan cannot be classified as a mandate since it provides only a proposed plan of development and alterations to the park. The Court finds that this document is of little value to the instant inquiry.

[¶ 27] It thus appears as though the relevant case law on this topic combined with the language used in most of the above cited manuals does not support plaintiffs' claim that a federal mandate existed. Many of the same provisions upon which plaintiffs rely have been proffered in similar cases in various federal circuit courts and were rejected. Those materials which are distinct to the operation and management of the Badlands National Park are either too general or are not really compulsory in nature. The Court therefore finds that the first element of the *Berkovitz* standard has been met: there were no federal statutes or policies mandating that protective measures, including the placement of signs, be taken in the Sheep Mountain Table area.

### [¶ 28]   2. Policy Considerations

■ [¶ 29] Once it has been established that the conduct in question was discretionary the second prong of the discretionary function standard as outlined in *Berkovitz* requires that the conduct be the result of policy considerations. *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959. Initially, the Court notes that when "governmental policy permits the exercise of discretion, it is presumed that the acts are grounded in policy." *Chantal v. United States,* 104 F.3d 207, 212 (8th Cir.1997) (citing *United States v. Gaubert,* 499 U.S. 315, 324, 111 S.Ct. 1267, 1274–75, 113 L.Ed.2d 335 (1991)). Plaintiff, therefore, must offer some evidence to rebut the presumption. *Id.*

[¶ 30] *Chantal* involved a suit by an individual who had tripped on some steps near the St. Louis Gateway Arch. Chantal argued that the NPS should have posted warning signs around the steps or should have cordoned off the area. The Eighth Circuit did not agree. The court noted that the NPS is statutorily required to preserve the "fundamental purpose of the park by [conserving] the scenery and historical object[s] ... by such means as will leave them unimpaired for the enjoyment of future generations." *Chantal,* 104 F.3d at 212 (citing *Soni v. United States,* 739 F.Supp. 485, 487 (E.D.Mo.1990)

(quoting 16 U.S.C. § 1)). The same statutory imperative applies to the Badlands National Park. The NPS is charged with maintaining the natural beauty of the landscape and is to minimize environmental intrusions. Moreover, defendant need not show that a policy balancing did occur but merely that the decision not to take protective measures was "susceptible to policy analysis." *C.R.S. by D.B.S. v. United States*, 11 F.3d 791 (8th Cir.1993) (citing *Gaubert*, 499 U.S. at 325–26, 111 S.Ct. at 1275).

[¶ 31] In *Zumwalt v. United States*, 928 F.2d 951 (10th Cir.1991), the Tenth Circuit faced a similar issue as presented in this case. In that case, an individual who was injured after he tripped on some rocks filed suit against the NPS for failing to place adequate warning signs. *Id.* The court applied the *Berkovitz* standard. In finding that the choice of safety measures was a policy based decision and thus shielded by the discretionary function doctrine, the court noted that the NPS "undertook a balancing of social, economic, and political policies." *Id.* at 955.

[¶ 32] The Court finds that the decision on what precautions to make at Sheep Mountain Table was susceptible to policy analysis. First, aesthetic reasons existed for the NPS not to place railings or signs in the area. Badlands National Park is place of stunning vistas and unblemished beauty. It is primarily a protected area due to its aesthetic value. Any intrusion on the views the park offers requires a balancing of values. Second, economic concerns are present as well. To post signs and build railings everywhere in the park which had the potential for causing harm would not only defeat the aesthetic purpose of the park but would be cost prohibitive. The NPS has provided railings and warning signs for those areas of the park which are high traffic areas and has chosen not to provide such precautions everywhere throughout the park. This weighing of economic and safety is inherent in most park decisions. Finally, the NPS must consider the environmental impact of posting signs and building railings at every location which potentially presents a danger. It is apparent then that the decisions made by the NPS in and around the Sheep Mountain Table area are susceptible to policy analysis, thus meeting the second prong of the *Berkovitz* standard.

## CONCLUSION

[¶ 33] The death of Jeffrey Whalen Jr., at Sheep Mountain Table, though tragic, is not actionable. Through the FTCA, Congress has provided a means to redress such injuries if government negligence is the cause. However, the discretionary function exception serves to limit governmental liability for injuries caused by acts involving judgment or discretion which are based upon policy considerations. In the instant case, the decision on what, if any, safety precautions to implement around Sheep Mountain Table was squarely in the hands of the NPS employees. Despite plaintiffs' assertions otherwise, there is no federal mandate which directs NPS employees to implement safety measures wherever harm could befall park patrons. Since there was no mandate the decision not to provide safety measures must be based upon policy considerations. The decision not to implement safety precautions at Sheep Mountain Table is susceptible to such policy considerations as aesthetic and environmental impact as well as economic concerns. Since both prongs of the required discretionary function exception are present the FTCA is not applicable and the Court is without jurisdiction over this matter.

[¶ 34] Accordingly, it is hereby

[¶ 35] ORDERED that plaintiffs' motion to convert the motion to dismiss into a motion for summary judgment and allow further discovery (Docket # 11) is denied.

[¶ 36] IT IS FURTHER ORDERED that the government's motion to dismiss for lack of subject matter jurisdiction (Docket # 7) is granted. Judgment shall issue accordingly.