Drema CLAYPOOL, Plaintiff,

v.

UNITED STATES of America, Defendant,

and

Eileen Fox, Administratrix of the Estate of Mildred Elois Ennis, deceased, Plaintiff,

v.

United States of America, Defendant.

Nos. CIV. A. 5:99–0683, CIV. A. 5:99–0684.

United States District Court, S.D. West Virginia, Beckley Division.

July 10, 2000.

Norman W. White, Shaffer & Shaffer, Madison, WV, Pat C. Fragile, Beckley, WV, for Plaintiff.

Michael L. Keller, Assistant U.S. Attorney, Charleston, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the United States' Motion to Dismiss. At issue is the applicability of the discretionary function exception of the Federal Tort Claims Act. For reasons that follow, the Court **FINDS** and **CONCLUDES** the National Park Service's decision not to maintain and inspect the terrain adjoining roads in the New River Gorge National Park was a discretionary

policy decision. The United States' motion is **GRANTED**.

## I. FACTUAL BACKGROUND

On February 21, 1998 Plaintiff Drema Claypool and her mother, Mildred Ennis, were traveling on Route 41 in Fayette County, West Virginia. While they were passing through a portion of the New River Gorge, a thirty-ton boulder dislodged from the embankment next to the road and struck Claypool's vehicle. Claypool was not physically injured, but her mother was killed instantly.

Claypool and the administratix for her mother's estate, Plaintiff Eileen Fox, filed administrative claims against the United States pursuant to the Federal Tort Claims Act ("FTCA"). The claims were denied and Plaintiffs seasonably filed separate actions. Claypool commenced a civil action alleging the boulder fell because the National Park Service failed to maintain and repair the embankment and she suffered severe emotional distress from witnessing the death of her mother. Fox filed a similar statutory wrongful death action. The two cases were then consolidated.

The National Park Service operates the New River Gorge National River ("New River Gorge") as part of the National Park system. Located inside the boundaries of the New River Gorge are hundreds of miles of state- and county-owned roads. Gary Hartley is Chief Ranger in charge of National Resource Management and Visitor Protection in the New River Gorge. By way of affidavit, Hartley explained the National Park Service has a policy of leaving maintenance and protection of state- and locally-owned roads in the New River Gorge to state and to local municipalities. Hartley testified the New River Gorge employs only fourteen rangers and the Park Service does not have the financial resources or manpower to monitor or modify the natural conditions adjoining roads in the Gorge.

Hartley also noted Congress charges the National Park Service with promoting and regulating

> the use of federal areas known as national parks, monuments, and reservations ... by such means and measures as conform to the fundamental purpose of said parks, and reservations, which purpose is to conserve the scenery and natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

(Mem. in Supp. of the United States['] Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Ex. 1 ¶ 2 (citing 16 U.S.C. § 1).) Boulders and rocks loosening and dislodging from the embankment are common occurrences in the park. According to Hartley, to remedy this natural occurrence the Park Service would have to construct retaining walls and/or make alterations to the natural terrain. Consistent with Congress' charge, the Park Service has declined to take such measures.

Plaintiffs submitted exhibits tending to show the danger of a rock or boulder breaking loose onto Route 41 was open and notorious. Plaintiffs submitted pictures of the embankment and questionnaires presumably based on accounts from individuals who observed the dangerous condition prior to the accident.[1]

## II. DISCUSSION

### A. Standard of Review

Our Court of Appeals has often stated the settled standard governing the disposi-

---

1. The Court notes none of the statements in the questionnaires are sworn. Indeed, some of the "witnesses" refused even to sign the questionnaire. The Court questions the admissibility of these unauthenticated hearsay statements. However, as is discussed *infra*, this evidence is not relevant to the ultimate issue presented by the pending motion, and therefore the Court need not address its competence.

tion of a motion to dismiss pursuant to *Rule* 12(b)(6), *Federal Rules of Civil Procedure:*

> In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.

*Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted); *see also Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996); *Gardner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 475 (S.D.W.Va.1996). It is through this analytical prism the Court evaluates Defendant's motion.[2]

The applicability of the discretionary function exception is a question of law. *See* 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters 3d* § 3658.1 at 71 n. 7.5 (Supp. 2000).

### B. Discretionary Function Exception

■ The FTCA, 29 U.S.C. § 1346(b), waives the United States' sovereign immunity and authorizes damages suits. The Act, however, includes a list of exceptions to its broad waiver of immunity. The following exception—known as the "discretionary function" exception—is the issue here:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—

> (a) Any claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(b). "This exception … marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (citation omitted); *accord Baum v. United States,* 986 F.2d 716, 719 (4th Cir. 1993).

### 1. Burden of Proof

■ Ordinarily, the party asserting jurisdiction has the burden of demonstrating jurisdiction indeed exists. However, there is a split of authority regarding who bears the burden of persuasion on the applicability of the discretionary function exception. *Compare Prescott v. United States,* 973 F.2d 696, 701–02 (9th Cir.1992) (discretionary function exception is affirmative defense and Government bears burden of proof it applies); *Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982) (same); 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction & Procedure* § 3658.1 at 369 (3rd ed. 1998) ("Although the Plaintiff bears the initial burden of proving jurisdiction under the Federal Tort Claims Act, most courts have concluded that the applicability of the discretionary function exception falls upon the United States."); *with Kiehn v. United*

---

**2.** The pending motion is supported by an affidavit, which alleges facts outside the pleadings. However, the motion to dismiss is based on lack of subject mater jurisdiction, not on a failure to state a claim, and therefore the motion is not converted to a motion for summary judgment. *See· generally* Fed. R.Civ.P. 12(b) ("If, on a motion *asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief*

*can be granted,* matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.") (emphasis added); *Interstate Traffic Control v. Bonasso,* —— F.Supp.2d ——, No. 2:98–CV–0962, slip op. at 8 (S.D.W. Va. June 21, 2000); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1350 (2d ed.2000).

*States,* 984 F.2d 1100, 1105 n. 7 (10th Cir.1993) ("[T]he reasoning in *Prescott* may be suspect in light of [*United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) ]."); *Miller v. United States,* 710 F.2d 656, 662 (10th Cir.1983) ("[T]he discretionary function exception poses a jurisdictional prerequisite to suit which the plaintiff must ultimately meet as part of his overall burden of establishing subject matter jurisdiction."); *AIG Aviation Ins. Servs., Inc. v. United States,* 885 F.Supp. 1496, 1498 (D.Utah 1995) ("Once the government has invoked the [discretionary function] exception, plaintiffs bear the burden of showing it does not apply to the case at hand."); *see also* Ugo Colella & Adam Bain, *The Burden of Proving Jurisdiction Under the Federal Tort Claims Act: A Uniform Approach to Allocation,* 67 Fordham L.Rev. 2869, 2866 (1999) ("[C]ourts have inconsistently allocated the burden of proof for FTCA jurisdiction issues—sometimes imposing it on plaintiffs, sometimes on the United States.").

In this case, the United States filed the Hartley affidavit in support of its motion. The allegations in the affidavit are uncontested. Accordingly, if the Government bears the burden of proof, it has provided uncontested evidence sufficient, if accepted, to carry its burden. Because the following discussion concludes the United States has demonstrated its actions fall within the discretionary function exception, the Court assumes, without deciding, the Government bears the burden of demonstrating the exception applies.

### 2. Applicability of the Discretionary Function Exception

The United States submits the National Park Service has made a policy decision not to inspect or maintain the terrain adjoining trails and roads. It further contends the Park Service has the discretion to make such a decision, and therefore it is immune under the discretionary function exception of the FTCA.

The Fourth Circuit has recognized the Supreme Court's use of two-tier analysis for identifying discretionary functions:

The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action. If such mandatory statute, regulation, or policy applies, then the conduct involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary.

\*　　\*　　\*　　\*　　\*　　\*

If no such mandatory statute, regulation or policy applies to remove the challenged conduct from the choice and judgment of the government, then we move to the second tier of the *Berkovitz /Gaubert* analysis and ask whether the choice or judgment involved is one based on considerations of public policy.

*Baum v. United States,* 986 F.2d 716, 720 (4th Cir.1993) (quotations omitted).

■ Plaintiffs' first argues Defendant is bound by a mandatory federal regulation or policy to ensure the safety of individuals traveling on roads in the New River Gorge. The United States Department of Interior National Park Service has issued Loss Control Management Guidelines. (*See* Mem. in Supp. of United States['] Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Ex. 2 at 156.) Plaintiffs argue the loss control management guidelines require the National Park Service to maintain and inspect terrain adjoining Route 41 because the guidelines reference a number of regulations and statutes [3] that

---

**3.** Specifically, the guidelines state as follows:

B. The following National concensus [sic] standards have special significance to the National Park Service Loss Control Program and will be used where applicable.

29 C.F.R. § 1910—General Industry Standards
29 C.F.R. § 1926—Construction Standards
American National Standards Institute (ANSI)

are to be "used where applicable." (*Id.* at 157.)

■■■ To exclude the applicability of the exception, a statute, regulation, or policy must be sufficiently specific such that "the employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954). Accordingly, broad, generalized directives do not take the conduct outside the exception. Employees and agents subject to such broad directives continue to retain discretion to act within the parameters of the general directive. *See Baum*, 986 F.2d at 722 (concluding "very general, sweeping language [in legislation authorizing construction of Baltimore–Washington Highway] is insufficient to remove questions of design and construction of guardrails ... from the National Park Service"); *see also Zumwalt v. United States*, 928 F.2d 951, 954 (10th Cir.1991) (finding broad directive leaves discretion with National Park officials). Plaintiffs have not identified any specific statute or regulation that imposes a duty on the National Park Service to ensure the terrain adjoining roads is safe for travelers. Thus, the Park Service retains discretion whether to maintain and inspect the terrain adjoining Route 41.

As for the second tier of analysis, the exception applies only to conduct based

> Manual on Uniform Traffic Control Devices
> Federal Highway Administration Codes—DOT
> Uniform Building Code
> Highway Safety Act (PL 89–564)
> National Fire Codes
> Public Health and Sanitation Codes
> C. In the absence of appropriate standards, the National Park Service may utilize applicable provisions of all the Federal, State, and local safety, health and sanitary statutes and codes.
> D. Where no other Federal regulations exist which govern a particular safety and health hazard, the National Park Service may promulgate internal guidelines to address to address those hazards....

upon considerations of public policy. *See Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954.

> This requirement is consistent with and mandated by the general purpose underlying the FTCA and the discretionary function exception, *i.e.*, to balance Congress' desire to allow redress of injuries suffered through the negligence of government actors against the need to protect the government from being hobbled in the discharge of policy-driven duties by tort suits.

*Baum*, 986 F.2d at 720.

In a line of discretionary function cases, the Supreme Court has attempted to define what government actions (or omissions) are considered policy decisions. Plaintiffs seeking to impose liability on the Government frequently rely on *Indian Towing v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). In that case the Supreme Court held the Government liable for negligently maintaining a lighthouse. The United States argued it could not be held liable for "purely governmental activity." The Government contended the FTCA imposes liability identical to common law tort liability for individuals; therefore purely governmental actions are not covered. The Court rejected this argument. There was no discussion regarding the applicability of the discretionary function exception.[4]

(Mem. in Supp. of United States['] Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Ex. 2 at 157.)

4. The policy judgment test is not discussed in *Indian Towing*. The Government assumed responsibility for maintaining the lighthouse, and agents had failed to maintain the lighthouse consistent with their job duties. *See id.* at 69, 76 S.Ct. 122 ("The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it

The Court dealt more directly with policy judgments in later cases. In *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Court held the Federal Aviation Administration's (FAA's) system of "spot-checking" airplanes when certifying them for safety was based on policy decisions. The Court explained that the decision on how best to enforce safety regulations "require[s] the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." *Id.* at 820, 104 S.Ct. 2755. The Court declined to second guess the FAA's policy, finding the discretionary function exception was designed to prevent "[j]udicial intervention in such decisionmaking through private tort suits." *Id.*

In *Gaubert*, the Court determined that federal home loan regulators exercised their discretion and made policy decisions while overseeing a savings and loan. 499 U.S. at 332, 111 S.Ct. 1267. Plaintiffs in that case had argued the discretionary function exception only protects higher officials when formulating policies, and the exception did not apply to the day-to-day decisions of regulators on the "operational level." The Court, however, declined to remove policy-based decisions in day-to-day operations from the exception. *See id.* at 325 & 334, 111 S.Ct. 1267.

The lower courts have been left with the task of applying the general principles distilled from the Supreme Court's policy judgment jurisprudence to a broad range of governmental acts or omissions in differing factual scenarios. Supposedly, when deciding whether the decision is policy-based, the Court is to look at the challenged decision in an objective sense, and ask "whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Id.* at 721. But a review of discretionary function exception cases reveals a tendency by courts to resolve the applicability of the exception on the specific facts of each case. *See generally* Richard P. Schafer, *Liability of United States for Failure to Warn of Danger or Hazard Resulting from Governmental Act or Omission as Affected by "Discretionary Function or Duty" Exception to Federal Tort Claims Act*, 64 A.L.R. Fed. 358 (1983); 35 Am.Jur.2d *Federal Tort Claims Act* § 16 (1967); *see also* Bruce A. Peterson & Mark Van Der Weide, *Susceptible to Faulty Analysis: United States v. Gaubert and the Resurrection of Federal Sovereign Immunity*, 72 Notre Dame L.Rev. 447, 465–69 (1997) (opining *Gaubert* resulted in an expansion in governmental immunity under the discretionary function exception). Although "the purpose underlying the discretionary function exception is well accepted, courts have encountered some difficulty in applying its rather general terms to the myriad of fact patterns that predictably present themselves as litigants attempt to measure governmental conduct by the measuring stick of state tort law." *Id.* at 720; *see also Gaubert*, 499 U.S. at 335, 111 S.Ct. 1267 ("[L]ower courts have had difficulty in applying the [policy judgment] test.") (Scalia, J., concurring). A review of cases in this area demonstrates courts faced with analogous facts nevertheless arrive at different answers to the question, when is government inaction considered policy-based?

Our Court of Appeals appears to have taken a broad view of the discretionary function exception. On most occasions the court has held governmental omissions or inaction in safety matters were the result of a policy decision. For instance, in *Baum, supra*, the plaintiff sued when a guardrail on the Baltimore–Washington

was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act."). Indeed,

the Government never contended the failure to properly maintain the lighthouse was a policy decision.

Highway gave way. The plaintiff argued the National Park Service negligently maintained the guardrail, and this negligence caused the plaintiff's automobile to carom off a bridge and plummet twenty feet below. The court determined the decision to repair or replace the guardrail was policy-based:

> The decision of how and when to replace a major element of a substantial public facility is, like the decisions involving the design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages.

*Id.* at 724; *see also Bowman v. United States,* 820 F.2d 1393, 1395 (4th Cir.1987) (holding National Park Service decision not to install guardrails on Blue Ridge Parkway protected by discretionary function exception).

The Tenth Circuit reached a contrary result in *Duke v. Department of Agriculture Forest Service,* 131 F.3d 1407 (10th Cir.1997). In that case, six-year-old Joel Duke suffered significant brain injuries when a boulder rolled down a hillside and smashed into his tent while he and his family were camping at Gila National Forest. The court concluded the Park Service's failure to warn campers—by erecting a sign—or failing to protect the campers in that area was not based on "political, social, or economic decisions of the sort the exception was designed to protect." *Duke,* 131 F.3d at 1412. The court explained a review of the record revealed "no evidence by the government of any social or political justification. It simply relie[d] on the presumption that there was some policy reason for the fail-

ure to do anything at the site." *Id.* Absent any evidence that the Park Service's decision was policy-based, the court reversed the district court's order dismissing the case and remanded for further proceedings.[5] *Id.*

*Duke* relied in part on a case out of the Court of Appeals for the District of Columbia. In *Cope v. Scott,* 45 F.3d 445 (D.C.Cir.1995), the court concluded the failure to post a sign warning of dangerous road conditions in Rock Creek Park in Washington, D.C. was not insulated by the discretionary function exception. The court conducted a fact-based inquiry and determined the failure to post signs on the heavily traveled Beach Drive—which already contained a number of traffic signs—was not a discretionary decision bound up in social and political reasons. *Cope* 45 F.3d at 452. The Court rejected the Government's argument that any decision that implicates the slightest financial or budgetary concern was rooted in policy, and therefore immune from liability. The court explained, "This approach, however, would not only eviscerate the second step of analysis set out in *Berkovitz* and *Gaubert,* but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity." *Id.* at 449. Both *Duke* and *Cope* imposed a seemingly small burden on the Government: to erect a sign warning individuals of an inherently dangerous condition on government-controlled property.

The Third Circuit went a small step further in *Gotha v. United States,* 115 F.3d 176 (3rd Cir.1997). There the plaintiff sued when she injured her ankle on a dark, unlit, steep path on a Navy base. She argued the Navy was negligent in failing to build a stairway and failing to provide sufficient lighting. Although erecting a staircase would impose slightly more financial burden on the Government

---

**5.** The dissent in *Duke* criticized the majority for placing the burden on the Government to produce evidence that the policy of failing to warn and protect campers was based on so-

cial, political, and/or economic reasons. *Duke,* 131 F.3d at 1413 (Briscoe, J. dissenting). The dissent contended the burden ought to fall on the plaintiff.

than would erecting signs as was at issue in *Duke* and *Cope,* the Third Circuit still held the Navy's decision not to build a staircase nor to take any safety measures with respect to the path was a "mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." *Gotha,* 115 F.3d at 181. The *Gotha* court determined the exception accordingly did not apply.

■ At first impression, cases like *Baum, supra,* and *Gotha, supra,* seem at odds. However, a closer reading of these cases demonstrates common threads. For instance, when the Government fails to act because to do so would cause great financial expense or constitute a substantial effort, courts will generally presume the inaction to be a policy decision. *See, e.g., Baum,* 986 F.2d at 724 ("The decision how and when to replace a *major element of a substantial public facility* is ... at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy."); *cf. Gotha,* 115 F.3d at 181–82 (finding decision not to build staircase nor to take other safety measures mundane and administrative such that it did not implicate policy decisions consistent with the Navy's mission); *Cope,* 45 F.3d at 451 (holding failure to post a sign warning of slick conditions was not policy-based). To illustrate, in *Baum,* the court specifically left open the possibility that other failure-to-maintain claims, based on different facts (presumably instances requiring less governmental expense or effort), might be cognizable. *See Baum,* 986 F.2d at 724 ("[W]e do not suggest that every maintenance decision of every government actor is so policy-based as to fall within the discretionary function exception."). In *Cope, supra,* the court concluded the Park Service's decision not to reconstruct a road was policy-based, but its failure to erect signs alerting drivers of the slippery conditions was not. *Cope,* 45

F.3d at 451. When a safety measure requires substantial expense to the Government, significant budgetary concerns are implicated. A court will not second guess the Government's decision on how best to allocate its finite resources. *See Baum,* 986 F.2d at 724. However, in order to prevent the Government from relying on budgetary concerns that in effect will result in the exception swallowing the rule, a failure to take safety measures that do not entail significant cost is not considered policy-based. *See Gotha,* 115 F.3d at 181–82; *Cope,* 45 F.3d at 449; *ARA Leisure Servs. v. United States,* 831 F.2d 193, 196 (9th Cir.1987) ("Budgetary constraints underlie virtually all government activity.").

■ Decisions designed to protect the natural and scenic beauty of national parks are also generally immune from FTCA liability. *See, e.g., Autery,* 992 F.2d 1523, 1531 ("To decide on a method of inspecting potentially hazardous trees, ... the Park Service likely had to determine and weigh ... *the extent to which the natural state of the forest should be preserved.*") (emphasis added); *Kiehn,* 984 F.2d 1100, 1104 ("The [National Park Service's] decision not to place warning signs at the petroglyphs *was a component of an overall policy decision to protect the area's natural scenery.*") (emphasis added); *Bowman,* 820 F.2d at 1395. With these common principles in mind, the Court turns to the instant case.

■ Here, the Government has provided evidence the decision not to inspect or maintain the terrain adjoining roads is policy-based. Hartley's affidavit, which is not contested, demonstrates the Park Service has decided, as a matter of policy (1) to preserve the natural and scenic beauty of the park by not erecting fences or restraints to catch falling rocks and boulders and (2) to allocate its limited human and financial resources on administration of the park and not on inspecting and maintaining the terrain adjoining trails and roads in the park. Plaintiffs argue that

*Duke* requires this Court to deny the United States' motion. The Court disagrees.

*Duke* is readily distinguishable from the case at hand. There the court's decision hinged on the Government's failure to produce any evidence that its inaction was policy-based. *Duke*, 131 F.3d at 1412. To be sure, the Tenth Circuit has held in other cases—where the Government presented evidence demonstrating its decision was based on policy reasons—failures to take safety measures were immune. *See, e.g., Autery v. United States*, 992 F.2d 1523, 1531 (11th Cir.1993); *Kiehn*, 984 F.2d at 1104. In the instant case the United States produced uncontested testimony from Hartley that the decision not to maintain or inspect terrain adjoining Route 41 was a calculated policy decision. And Hartley's affidavit is not solely a legal conclusion: he provides supporting evidence, including current staffing levels, opinions about the expense of maintaining and inspecting the embankments, and opinions about the effect safety measures would have on the scenic beauty of the park. *Duke* does not require a contrary result in this case.[6]

Rather, the Court agrees with the United States that *Baum, supra*, controls. The National Park Service's decision not to maintain the terrain adjoining Route 41 was policy-based. Hartley affirmed the National Park Service does not have unlimited resources, and in allocating its resources, it decided not to maintain and inspect the roads in the New River Gorge. Requiring the National Park Service to protect drivers from boulders falling off embankments and into the highways would impose a substantial financial burden on the Park Service.

Moreover, the Park Service has concluded that measures required to make the roads safe from falling objects would compromise the scenic beauty of the park. This too is clearly a policy decision. *See, e.g., Autery*, 992 F.2d at 1531; *Kiehn*, 984 F.2d at 1104; *Bowman*, 820 F.2d at 1395. The Park Service made a conscious policy decision (1) not to allocate its limited resources to the substantial effort of maintaining and inspecting the terrain adjoining roads in the park and (2) not to disrupt the natural conditions in the park, consistent with its charge by Congress. These decisions were policy-based and therefore covered by the discretionary function exception.[7]

### III.  CONCLUSION

Because the discretionary function exception applies to the National Park Service's decision not to maintain and inspect the roads in the New River Gorge, the Court lacks subject matter jurisdiction over Plaintiffs' claim. Accordingly, Defendant's motion is **GRANTED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

---

**6.** *Indian Towing, supra,* is also distinguishable. There the Coast Guard assumed responsibility for the malfunctioning light house. Here, the Park Service has not assumed responsibility for making the embankments in the park safe. *Cf. Indian Towing,* 350 U.S. at 69, 76 S.Ct. 122. There is no evidence Defendant endeavored to make the embankments safe, which would suggest it may have been negligent in carrying out its voluntarily undertaken responsibilities.

**7.** As noted earlier, Plaintiffs presented exhibits, including photographs and questionnaires, which tended to show the dangerous condition where Claypool's car was struck was open and notorious. However, this evidence goes to the issue of whether Defendant was negligent. It in no way bears on whether the discretionary function exception applies or whether the National Park Service's actions were policy-based.