# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2265

_____

| | | |
|---|---|---|
| KCCP Trust, a Delaware Statutory Trust, doing business as Time Warner Cable, | * * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | Western District of Missouri. |
| The City of North Kansas City, | * * | |
| Appellee. | * | |

_____

Submitted: September 15, 2005
Filed: December 29, 2005

_____

Before LOKEN, Chief Judge, BYE, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

KCCP Trust, doing business as Time Warner Cable, ("Time Warner") sued to enjoin the City of North Kansas City, Missouri, ("the City") from building a fiber-optic network which it contended Missouri statutory and constitutional law prohibited in the absence of a referendum. The district court[1] dismissed for lack of jurisdiction without prejudice. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## I. *Background*

In June 2003, the City Council passed a resolution to commission a review of the City's cable infrastructure. The City contracted with Black & Veatch Corporation, a private engineering firm, to conduct this review. The ensuing report and analysis proposed that the City construct and operate a fiber-optic network to provide telephone, internet, and television services to every business and home in the City. The report stated that providing cable-television services would be necessary in order for the network to be self-supporting.

In August 2004, the City Council contracted with Black & Veatch to design and plan a fiber-optic network. The planned network would provide data, voice, and video to customers in the City. However, as initially planned and constructed, the network would not and indeed could not provide cable-television services without being connected to a cable television head end facility. A head end facility contains the satellite dishes and other equipment necessary to supply television programming to a fiber-optic network.[2] The City Council has not yet decided and has never voted on the issue of whether to provide cable-television services on the planned fiber-optic network, and the contract with Black & Veatch does not call for the preparation of plans for the construction of a head end facility or for the connection to an existing head end facility.

---

[2]Thus, in order to provide cable television services, the City must either connect to an existing head end facility or construct its own. Either option is likely to be quite expensive. The report from Black & Veatch estimated the cost of a head end facility to vary as follows: (1) if the City builds its own, estimated cost is $720,000; (2) if the City connects to a head end in the sky, estimated cost is $50,000, plus monthly reoccurring costs, and plus an estimated cost of $500,000 for equipment to provide local channels; and (3) if the City connects to an existing head end facility (such as the one belonging to Time Warner), the cost would depend on the result of negotiations with that provider.

The following month, Time Warner, which currently provides cable television and other related services to the greater Kansas City area, wrote a letter to the City stating that it believed that the proposed fiber-optic network would violate Missouri law and in particular Mo. Rev. Stat. § 71.970. Section 71.970(1) provides that "[n]o municipality may own or operate cable television facilities and services unless approved by a vote of the people." The City Council disagreed, advising Time Warner that the City had not yet decided whether to offer cable-television services over its fiber-optic network. The City acknowledged that a public vote would be required prior to offering cable-televison services over the planned network.

Time Warner then filed suit to enjoin the City from taking further steps in the development or construction of its fiber-optic network without a public vote. In the alternative, Time Warner sought a ruling that would bar the City from using its planned fiber-optic network to provide cable-television services without a public vote. In addition to its claims under Missouri law, Time Warner made several claims under the United States Constitution. The district court found that it lacked jurisdiction over the complaint because the case was not ripe for judicial consideration. At that time, the City had not violated state law nor stated an intention to do so. The district court found that the City does not own a cable-television facility or offer cable-television services, noting that the City may do so in the future but then again it might not.

II. *Discussion*

The district court dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Where, as here, the district court's decision is based upon the complaint and on its own determination of disputed factual issues, we review those findings under the "clearly erroneous" standard. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). The district court was not clearly erroneous.

A. *Statutory Claim*

Section 71.970(1) expressly prohibits municipalities from owning or operating cable-television facilities unless the municipality's populace votes to approve the endeavor. The pertinent question then is whether the City owns or operates such a facility or is threatening to do so in violation of § 71.970(1). In order to own cable-televison facilities, the City would require the capacity to receive cable-television signals for transmission over its fiber-optic network. It is factually undisputed that the City's fiber-optic network is not connected to the required head end facility to receive such signals nor is there any plan to acquire it. Thus, Time Warner's statutory claim rests on a contingent future event: the ownership or operation of a *cable-television* facility by the City; therefore, Time Warner's claim that a vote is required under Missouri law is not ripe in that the City does not currently own or operate a *cable-television* facility because the planned *fiber-optic network* will not be capable of transmitting cable-television signals and because the City recognizes that in order for it to provide cable-television services a public vote would be required.

"The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." *Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005). Article III limits the federal courts to deciding "Cases" and "Controversies" and thus prohibits us from issuing advisory opinions. *Id*. "One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts." *Id*. (internal quotations and citations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (unanimous decision) (internal quotations and citations omitted). Ripeness requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 300–01 (quoting *Abbott Laboratories v. Gardener*, 387 U.S. 136, 149 (1967)).

Claiming that its case is ripe for adjudication, Time Warner hangs its hat on *South Dakota Mining Ass'n, Inc. v. Lawrence County*, 155 F.3d 1005 (8th Cir. 1998). In *South Dakota Mining*, we held that the plaintiffs' challenge to a local zoning ordinance was ripe for review, notwithstanding the fact that the ordinance had not been enforced against the plaintiffs. *South Dakota Mining*, 155 F.3d at 1008–09. Had the plaintiffs applied for a permit, it would have been "an exercise in futility" because the ordinance plainly prohibited the issuance of any new permits, without exception. *See id*. at 1008. Because this would have been an exercise in futility, we did not require the plaintiffs to apply for the permit and held their action ripe. *Id*. at 1008–09. *South Dakota Mining*, however, is distinguishable. The offending ordinance existed and threatened plaintiffs though unenforced. *Id.* at 1008. Here, no threat of state law violation exists because the antecedent cable-television facility does not exist and its future existence is uncertain.

If the City seeks to upgrade the network without a public vote, Time Warner may again seek a preliminary injunction. *See Texas*, 523 U.S. at 302. The fiber-optic network that the City plans to build is designed to provide Internet services to the area. Although Time Warner claims that providing cable-television services is necessary for the project to be self-supporting, the City has never stated that the network has to be self-supporting. Many government programs are not, standing alone, self-supporting. In any event, the facility, as currently planned, will not be capable of providing cable-television services without upgrade. This upgrade likely will be costly. The City is aware of § 71.970 and concedes that it would require a public vote before the network could be upgraded to provide cable-television services. Time Warner's statutory claim that a vote is required under Missouri law is not ripe.

### B. *Constitutional Claim*s

Because the planned fiber-optic network will not provide cable-television services without substantial upgrade, and because such an upgrade may never be

sought, there is currently no ripe case or controversy under Missouri law. Time Warner's Equal Protection and First Amendment claims under the United States Constitution are dubious but need not be decided because they are wholly dependent upon the existence of a valid Missouri statutory claim. We therefore decline to address them. We affirm the district court's dismissal of this action as not ripe.

_____