Nick GERHART, in his Capacity as Liquidator of CoOportunity Health, Inc.; and Dan Watkins, in his Capacity as Special Deputy Liquidator of CoOportunity Health, Inc., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES; Centers for Medicare & Medicaid Services; Thomas E. Price, in his Capacity as Secretary of the United States Department of Health and Human Services; and the United States of America, Defendants.

No. 4:16–cv–00151–RGE–CFB

United States District Court, S.D. Iowa, Central Division.

Signed 03/16/2017

Kirsten A. Byrd, Douglas J. Schmidt, Derek T. Teeter, Kansas City, MO, Mark Davis Hill, Husch Blackwell LLP, Omaha, NE, for Plaintiffs.

Charles E. Canter, Terrance Anthony Mebane, Serena M. Orloff, US Dept of Justice, Washington, DC, William C. Purdy, United States Attorney's Office, Des Moines, IA, Curtis J. Weidler, US Department of Justice, Washington, DC, for Defendants.

## ORDER RE: DEFENDANTS' MOTION TO DISMISS

Rebecca Goodgame Ebinger, United States District Judge

## I. INTRODUCTION

The Department of Health and Human Services seeks dismissal of the present suit. The Department asserts this Court does not have jurisdiction because the requested damages are purely monetary in nature and could be adequately addressed in the Court of Federal Claims. Defs.' Mot. Dismiss, ECF No. 61. The co-operative liquidators resist this motion, asserting this Court has jurisdiction because money damages are insufficient to address their claims. Pls.' Resist. Defs.' Mot. Dismiss, ECF No. 69.

The matter came before the Court for hearing on December 15, 2016. Hr'g Defs.' Mot. Dismiss Mins., ECF No. 78. Attorneys Charles Canter and Serena Orloff appeared on behalf of Defendants United States Department of Health and Human Services; Centers for Medicare and Medicaid Services; Thomas E. Price, in his capacity as Secretary of the United States Department of Health and Human Services;[1] and the United States.[2] *Id.* Attorneys Mark Hill, Douglas Schmidt, and Derek Teeter appeared on behalf of Plaintiff Nick Gerhart, in his capacity as Liquidator of CoOportunity Health, Inc.,[3] and Dan Watkins, in his capacity as Special Deputy Liquidator of CoOportunity Health, Inc.[4] *Id.*

For the reasons stated below, the Court grants HHS' Motion to Dismiss because the Court lacks jurisdiction over the Liquidators' claims.

## II. SUMMARY OF RELEVANT FACTS

The Court set forth an overview of the relevant facts in its August 12, 2016 order denying the Liquidators' motion for a preliminary injunction. ECF No. 55 at 2–8.

---

1. Thomas E. Price was sworn in as the Secretary of Health and Human Services on February 10, 2017. *Thomas E. Price, M.D.*, Dep't Health & Human Servs. (last visited Mar. 16, 2017), https://www.hhs.gov/about/leadership/secretary/thomas-e-price-md/index.html. He is substituted as a party for the former Secretary of Health and Human Services, Sylvia Matthews Burwell. *See* Fed. R. Civ. P. 25(d) (stating an "officer's successor is automatically substituted as a party").

2. Defendants are referred to collectively as "HHS."

3. Effective December 23, 2016, Gerhart no longer serves as the Iowa Insurance Commissioner. *Iowa Insurance Commissioner Nick Gerhart announces resignation; Branstad names Doug Ommen Interim Insurance Commissioner*, Office of the Governor of Iowa (Dec. 5, 2016), https://governor.iowa.gov/2016/12/iowa-insurance-commissioner-nick-gerhart-announces-resignation-branstad-names-doug-ommen. It is unknown whether Gerhart's successor, Doug Ommen, serves as a liquidator of the CoOportunity estate.

4. Plaintiffs are referred to collectively as "the Liquidators."

Since then, the parties provided additional briefing regarding the federal programs at issue and supplemented the record as to the present relationship between HHS and the Liquidators. The Court provides a focused recitation of the programs and facts at issue.

In part, the Liquidators take issue with HHS' treatment of the startup and solvency loans CoOportunity received and the Patient Protection and Affordable Care Act's (ACA) "3Rs" program payments. The 3Rs program consists of three programs: reinsurance, risk adjustment, and risk corridors. *See generally* 42 U.S.C. §§ 18061–63. Issuers organized under the Consumer Operated and Orientation Plan (CO–OP) program—such as CoOportunity—are eligible to participate in all three programs. Establishment of Consumer Operated and Oriented Plan (CO–OP) Program, 76 Fed. Reg. 77,392–01, 77,406 (Dec. 13, 2011). The 3Rs program was enacted to stabilize the market while issuers adjusted their actuarial estimates and to encourage participation in the nascent insurance marketplace. The ACA's 3Rs program is similar to the three mitigation programs enacted when Medicare Part D launched. *See* 42 U.S.C. § 1395w–115 (describing a permanent risk corridors program, a temporary risk adjustment program, and a permanent reinsurance program); 42 C.F.R. § 423.336 (same).

The reinsurance and risk corridors programs are temporary (transitional) programs for the 2014, 2015, and 2016 benefit years. *See* 42 U.S.C. §§ 18061(b)(1), 18062. The reinsurance program uses mandatory annual contributions to pay qualified issuers for a percentage of their high-risk (catastrophic) claims costs for individual enrollees. 45 C.F.R. §§ 153.220, 153.230, 153.235. The risk corridors program is "based on the ratio of the allowable costs of the plan to the plan's aggregate premiums." 42 U.S.C. § 18062(a). Under the risk

corridors program, issuers pay HHS a penalty if their claims costs are less than their premiums (minus administrative costs) by a given percentage. *Id.* § 18062(b)(2). Conversely, HHS makes payments to issuers having greater claims costs than premiums (minus administrative costs) over a given percentage. *Id.* § 18062(b)(1). The third program, the risk adjustment program, is permanent. *See id.* § 18063. The risk adjustment program mandates payments from insurance pools with lower-than-average actuarial risk to insurance pools with higher-than-average actuarial risk. Prior to the end of the 2014 benefit year, HHS announced it would operate the 3Rs program as budget neutral. *See* 45 C.F.R. § 153.230(d) ("If HHS determines that all reinsurance payments requested ... for a benefit year will not be equal to the amount of all reinsurance contributions collected, ... HHS will determine a uniform pro rata adjustment."); 160 Cong. Rec. H9838 (daily ed. Dec. 11, 2014) (noting that budget neutral means "the federal government will never pay out more than it collects from issuers over the three year period risk corridors are in effect"); HHS Notice of Benefit and Payment Parameters for 2014, 78 Fed. Reg. 15,410–01, 15,441 (Mar. 11, 2013) ("The Affordable Care Act risk adjustment program is designed to be a budget-neutral revenue redistribution among issuers."). *But see, e.g.,* 42 U.S.C. § 18062(b)(1) (providing HHS "shall pay" specified amounts to eligible issuers of qualified health plans); 45 C.F.R. § 153.510(b) (providing HHS "will pay" specified amounts to eligible issuers of qualified health plans).

Central to this suit is HHS' calculation of the risk corridors payments. For the 2014 benefit year, issuers received a prorated rate (12.6%) for their risk corridors payments. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., Risk Corridors Payment and

Charge Amounts for Benefit Year 2014 (Nov. 19, 2015), https://www.cms.gov/ CCIIO/Programs-and-Initiatives/Premium-Stabilization-Programs/Downloads/RC-Issuer-level-Report.pdf [hereinafter 2014 Risk Corridors Calculation]. Monies collected for the 2015 benefit year have been and will be used to pay the shortfalls from the 2014 benefit year. Defs.' Ex. 2, Reply Supp. Defs.' Mot. Dismiss 1–2, ECF No. 72–3 (letter dated September 9, 2016, estimating no funds will be available for 2015 benefit year risk corridors payments and stating funds collected will be used for 2014 benefit year risk corridors payments); *see also* Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., Risk Corridors Payment and Charge Amounts for the 2015 Benefit Year (Nov. 18, 2016), https://www.cms.gov/CCIIO/ Resources/Regulations-and-Guidance/ Downloads/2015-RC-Issuer-level-Report-11-18-16-FINAL-v2.pdf [hereinafter 2015 Risk Corridors Calculation]. The final risk corridors calculation will be based on the 2016 benefit year. The risk corridors payments for the 2016 benefit year are expected to be remitted starting in August 2017. HHS has indicated "in the event of a shortfall for the 2016 benefit year, HHS will explore other sources of funding for risk corridors payments, subject to the availability of appropriations." ECF No. 72–3 at 1. HHS states it intends to work with Congress to make "required" risk corridors payments. *Id.*

CoOportunity was an insurer incorporated in Iowa and licensed by the states of Iowa and Nebraska to issue health insurance plans.[5] First Am. Compl. (FAC) ¶¶ 23–24, ECF No. 51. During its operation, CoOportunity received $14.7 million in startup funds and $130.6 million in solvency funds. *Id.* ¶¶ 20, 30. In December

2014, CoOportunity was placed under a supervision order by the Iowa Insurance Commissioner. *Id.* ¶ 34. On February 13, 2015, HHS terminated the startup loan agreement with CoOportunity. *Id.* ¶¶ 82–83. Effective February 28, 2015, the Iowa District Court for Polk County issued a final order of liquidation for CoOportunity. *Id.* ¶ 41. In the benefit year 2014, HHS owed CoOportunity a reimbursement under the risk adjustment and reinsurance programs. HHS netted these payments, along with other amounts owed under the ACA, and remitted a payment to the Liquidators. *See id.* ¶¶ 116–17; 45 C.F.R. § 156.1215. CoOportunity was also owed a risk corridors payment for 2014. *See* 2014 Risk Corridors Calculation at tbls.16 & 28. CoOportunity's 2014 risk corridors payment was not released because HHS placed an administrative hold on CoOportunity's accounts, stating the insurer was insolvent and indebted to the United States. FAC ¶ 118. In March 2016, HHS collected CoOportunity's $14.7 million startup loan through offset. *Id.* ¶¶ 111–14; Pls.' Ex. 7, Pls.' Mot. Prelim. Inj., ECF No. 33–2 (letter dated March 22, 2016). As recently as August 2016, HHS notified the Liquidators it collected payments from the monies placed on administrative hold. Decl. Watkins, Pls.' Ex. 2, Pls.' Resist. Defs.' Mot. Dismiss 2–3, ECF No. 69–3; Pls.' Exs. 2–A to 2–H, Pls.' Resist. Defs.' Mot. Dismiss, ECF No. 69–3 (letters and emails dated August 2016 concerning CoOportunity's debts to HHS).

The Liquidators' amended complaint makes two general requests: Count I seeks declaratory relief, and Count II requests injunctive relief. Count I requests declaratory judgments that: 1) Iowa law governs all claims against CoOportunity;

---

5. Throughout this suit, there has been little discussion of CoOportunity's Nebraska operations. CoOportunity was incorporated in Iowa

with its "home office" in West Des Moines, Iowa. FAC ¶¶ 24–25.

2) HHS' netting of payments is arbitrary and capricious; 3) HHS' claim to super-priority is arbitrary and capricious; 4) HHS' administrative hold is arbitrary and capricious; and 5) HHS' netting is arbitrary and capricious. FAC ¶¶ 143–51. In Count II the Liquidators request an injunction: 1) mandating the release of the administrative hold on CoOportunity's account and prohibiting any such holds from being imposed in the future; 2) prohibiting HHS from setting-off or netting any payments owed to CoOportunity against any debts claimed by HHS; and 3) enjoining HHS from attempts to collect risk adjustment charges. *Id.* ¶¶ 152–53. HHS recharacterizes these claims generally as: 1) an offset claim, 2) a risk adjustment claim, and 3) a choice-of-law claim. Defs.' Br. Supp. Mot. Dismiss 1–2, ECF No. 64.

On September 6, 2016, HHS filed a Motion to Dismiss. ECF No. 61. The Liquidators filed a resistance. ECF No. 69. Following HHS' reply, ECF No. 74, the Liquidators also filed a supplemental resistance addressing *Land of Lincoln Mutual Health Insurance Company v. United States*, 129 Fed.Cl. 81 (Fed. Cl. 2016), ECF No. 77. HHS filed a notice of supplemental authority, providing the order granting in part and denying in part a motion to dismiss in *Health Republic Insurance Co. v. United States*, 129 Fed.Cl. 757 (Fed. Cl. 2017), ECF No. 81.

### III. LEGAL STANDARD

HHS asserts a factual challenge to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as well as a facial challenge to the merits under Rule 12(b)(6). When a party asserts a factual subject-matter jurisdiction challenge, the Court may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 728–30 (8th Cir. 1990). The Court is to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 730 (quoting *Morten-*

*sen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The Liquidators argue the Court should not consider information outside the pleadings in ruling on HHS' 12(b)(1) motion because the "jurisdictional issue is so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." Pls.' Br. Resist. Defs.' Mot. Dismiss 10, ECF No. 71 (citing *Whalen v. United States*, 29 F.Supp.2d 1093, 1095 (D.S.D. 1998) (considering a claim under the Federal Tort Claims Act)). The Court disagrees. The jurisdiction inquiry centers on the contours of the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, and the Tucker Act, 28 U.S.C. § 1346. This inquiry differs from the merits of the Liquidators' claims. Should this suit proceed to the merits, the Court would consider the authority of HHS to hold and offset CoOportunity's 3Rs program funds, examine the method used to calculate the 2015 risk adjustment payment, and determine whether Iowa law applies to HHS. A trial on the merits is not necessary prior to determining whether this Court has jurisdiction. *See, e.g.*, *Whalen*, 29 F.Supp.2d at 1095–96 (deciding jurisdiction under the Federal Tort Claims Act based on matters outside the pleadings prior to a trial on the merits finding the issues "not so enmeshed that a trial on the merits is required").

HHS also asserts the Liquidators fail to state claims upon which relief can be granted. To withstand a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *accord Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). A plausible claim

for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The court must accept as true all factual allegations in the complaint, but not. its legal conclusions. *Id.* at 678–79, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955). In doing so, "the reviewing court [shall] draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd sub nom., Iqbal,* 556 U.S. 662, 129 S.Ct. 1937). In order to withstand a motion to dismiss, a plaintiff must "nudge[ ]their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

## IV. DISCUSSION

HHS argues the Court lacks jurisdiction to consider each of the Liquidators' claims and alternatively asserts each claim fails on its merits. HHS argues it has not waived sovereign immunity in this Court, and the Liquidators could obtain an adequate remedy in the Court of Federal Claims under the Tucker Act. The Liquidators contend they seek "prospective injunctive relief," not available in the Court of Claims.

The Court considers each of the Liquidators' claims in turn, determining whether this Court has jurisdiction to consider the claim's merits.

### A. Offset Claim

The Liquidators assert HHS' decisions to hold, net, reduce, or setoff CoOportunity's funds is arbitrary, capricious, improper, and exceeds HHS' jurisdiction. FAC ¶¶ 145(a)–(e), 151(b)–(d) & (f)–(h), 153(a)–(b). HHS contends the Liquidators' offset claim seeks only monetary relief and the Court of Federal Claims has jurisdiction

over the claim. The Court first considers whether it has jurisdiction over this claim.

 The United States government may not be sued without its consent, and consent is a necessary condition for jurisdiction to exist. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255, 259, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (quoting *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). A waiver of sovereign immunity "must be unequivocally expressed in statutory text." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). *But see Burch v. Sec'y of Health & Human Servs.,* No. 99-946V, 2010 WL 1676767, at *4–6 (Fed. Cl. Apr. 9, 2010) (recognizing a restrictive enforcement of sovereign immunity in the 1990s, lessening in recent years).

 Congress has expressly waived the government's immunity for suits under the Tucker Act. 28 U.S.C. § 1491. The Tucker Act grants the Court of Federal Claims jurisdiction to hear suits requesting monetary damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." *Id.* § 1491(a)(1). In the Court of Claims, a Tucker Act plaintiff may request money the government has not paid and rely upon statutory or contractual authority for the right to be paid. *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007–08 (Cl. Ct. 1967), *abrogated in part on other grounds by Malone v. United States,* 849 F.2d 1441, 1444–45 (Fed. Cir. 1988); *accord Holley v. United States,* 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("Tucker Act jurisdiction requires not only a claim against the United States, but also requires, based on principles of

'sovereign immunity,' that there be a separate money-mandating statute the violation of which supports a claim for damages against the United States.").[6] The Court of Claims may not grant declaratory or injunctive relief. *Bowen v. Massachusetts*, 487 U.S. 879, 905 & n.40, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). HHS categorizes the Liquidators' claims as falling within the Court of Claims' jurisdiction under the Tucker Act. ECF No. 64 at 18–20.

The Administrative Procedure Act (APA) also waives the government's immunity to suit. To rely upon immunity under the APA, a plaintiff must seek relief for non-monetary damages, 5 U.S.C. § 702, *and* no adequate remedy may exist in another court, *id.* § 704. *Accord* ECF No. 74 at 3; ECF No. 71 at 12 (indicating agreement that both standards are required for APA waiver). The Liquidators assert they meet both standards and jurisdiction is therefore proper in this Court.

 To determine whether sovereign immunity is waived under either the APA or the Tucker Act, the Court must examine the substance of the claim, not just the form of the pleadings. *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004) ("[A] party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." (quoting *Consol. Edison Co. of N.Y. v. U.S. Dep't of Energy*,

247 F.3d 1378, 1385 (Fed. Cir. 2001))). The Court's analysis begins with whether there is an "adequate remedy" in another court for the Liquidators' offset claim. The Court begins with this question, rather than first asking whether the claim is for other than "money damages," to avoid the "linguistic" dispute between a § 702 and a § 704 inquiry, "a distinction that is at best murky, and at worst without a difference." *Suburban Mortg. Assocs. v. U.S. Dep't of Housing*, 480 F.3d 1116, 1124–25 (Fed. Cir. 2007). Namely, the Court considers whether the Court of Claims could provide an adequate remedy under the Tucker Act. 5 U.S.C. § 704. "The availability of an action for money damages under the Tucker Act ... is presumptively an 'adequate remedy' for § 704 purposes." *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005).

## 1. The Liquidators' claim and position

At the heart of the Liquidators' offset claim is that HHS improperly placed an administrative hold on payments due to CoOportunity and subsequently offset those funds against other debts owed by CoOportunity, including the startup loan funds. FAC ¶¶ 107–08, 111–12. The Liquidators state this "is in violation of the Iowa Court's Liquidation Order, Iowa law, and even federal law." *Id.* ¶¶ 109–10, 115. They ask this Court to issue a declaratory judgment that setting off debts including the startup loan, placing an administrative hold on CoOportunity's funds, and netting

**6.** The Court of Federal Claims must determine whether a substantive right—a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States"—allows the Liquidators to proceed. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc); *accord Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008). In *Health Republic Insurance Co. v.*

*United States*, for example, the Court of Claims found "section 1342 of the Affordable Care Act, 42 U.S.C. § 18062, and the regulation implementing section 1342's payment requirements, 45 C.F.R. § 153.510(b), are money-mandating provisions." 129 Fed.Cl. at 770; *accord Moda Health Plan, Inc. v. United States*, 130 Fed.Cl. 436, 450–51 (Fed. Cl. 2017); *Land of Lincoln Mut. Health Ins.*, 129 Fed.Cl. at 97, *appeal docketed*, No. 17–1224.

without accounting for all debits and credits is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and exceed[s] HHS['] ... statutory jurisdiction and authority." *Id.* ¶ 151(b), (c), (f).

For this claim, the Liquidators contend this Court has jurisdiction under the APA because the Court of Federal Claims cannot grant complete relief. The Liquidators cite *Bowen* for the proposition that because there is an ongoing relationship between CoOportunity and HHS involving "constantly shifting balance sheets," the Court of Claims cannot provide adequate relief. ECF No. 71 at 14–17 (quoting *Bowen*, 487 U.S. at 905, 108 S.Ct. 2722). The Liquidators describe the relationship between themselves and HHS as requiring "extensive interaction" to "work through the intricacies of the state liquidation process." *Id.* at 17. Given the small likelihood HHS will be able to distribute the past-due and presently due monies under the 3Rs program in a timely manner, the Liquidators state the Court of Claims cannot provide the necessary relief. *Id.* at 16–17. As liquidators, they cite their duty to obtain prompt, efficient, and complete relief in winding up the affairs of CoOportunity. *Id.*

### 2. HHS' position

HHS argues the Court of Federal Claims could provide the Liquidators an adequate remedy under the Tucker Act. HHS states the Court of Claims could refund "all unauthorized offsets and [HHS] would be prohibited from offsetting further payments under the principle of res judicata." ECF No. 64 at 18–19 (quoting *McBride . Cotton & Cattle Corp. v. Veneman*, 116 Fed.Appx. 89, 91 (9th Cir. 2004) (unpublished)). Therefore, HHS contends the Liquidators cannot rely upon district court jurisdiction under the APA where money would adequately address the alleged harms. *Id.* at 16–18.

HHS raises two additional defenses as to why this Court does not have jurisdiction over the offset claim: the Anti-Injunction Act, 26 U.S.C. § 7421(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201. ECF No. 64 at 21–22. HHS interprets the offset claim as a challenge to taxes, which they assert is properly challenged by suing for a refund after the taxes are paid under the Anti-Injunction Act. *Id.* at 21 (citing *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 132 S.Ct. 2566, 2583, 183 L.Ed.2d 450 (2012)). HHS further states the Declaratory Judgment Act prohibits a court from issuing a declaratory judgment as to federal taxes. *Id.* at 22 (citing *Singleton v. Mathis*, 284 F.2d 616, 619 (8th Cir. 1960)).

### 3. Analysis

█ The Court finds the Court of Federal Claims could adequately address the Liquidators' offset claim under the Tucker Act.[7] While the Liquidators insist the relationship between these parties mirrors the relationship between the parties in *Bowen*, these parties' relationship is less intricate. In *Bowen*, the State of Massachusetts challenged the decision to disallow a category of Medicaid payments for which the State sought reimbursement. 487 U.S. at 885–87, 108 S.Ct. 2722. The Court highlighted the "reimbursements" the State challenged were in fact advanced funds based on estimates of future expenditures rather than payments for past-due services. *Id.* at 883–84, 108 S.Ct. 2722. This prospective nature and the continuing relationship between HHS and the State meant the claims could not be heard in the Court of Claims because "judicial review [could] culminate in the entry of declarato-

---

7. Because the Court finds the Court of Federal Claims has jurisdiction to hear the offset claim, the Court does not consider HHS' alternative arguments based on either the Anti-Injunction Act or the Declaratory Judgment Act.

ry or injunctive relief that requires [HHS] to modify future practices," a remedy not available in the Court of Claims. *Id.* at 905, 108 S.Ct. 2722.

In contrast, the relationship between the Liquidators and HHS is time-limited and less complex. The reinsurance and risk corridors payments are limited to the 2014, 2015, and 2016 benefit years. CoOportunity was in business from March 22, 2013, to February 28, 2015. FAC ¶¶ 25, 41; *see also id.* ¶ 27 (stating CoOportunity's first open enrollment period began on October 1, 2013). CoOportunity did not participate on an exchange in 2016 and is not entitled to any 2016 reinsurance or risk corridors calculations, or any risk adjustment payments. HHS calculated and collected the 2015 risk corridors payments and has begun to make disbursements. *See* 2015 Risk Corridors Calculation.

The parties' relationship is ongoing to an extent because HHS is holding CoOportunity's funds, but this does not resemble the complex and continuing relationship in *Bowen.* The Court of Claims was an inadequate forum in *Bowen* because the Court of Claims could have awarded money as a "substitute[ ]for what ought to have been done," but the district court could order specific relief and "undo [HHS'] refusal to reimburse the State." 487 U.S. at 910, 108 S.Ct. 2722. The Liquidators' challenge requests the former: they seek a release of the money HHS holds because the Liquidators contend HHS has no right to hold, setoff, or net the funds. If the Court of Claims finds the administrative hold or the setoff was improper, that court can order HHS to reimburse the Liquidators. *See* 28 U.S.C. § 1503 (stating the Court of Claims may "render judgment upon any set-off or demand by the United States against any plaintiff in such court"); *id.* § 2508 ("Upon the trial of any suit in the United States Court of Federal Claims in which any set-off, counterclaim, claim for damages, or

other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff."). Money would adequately address the Liquidators' alleged harm. "Undoing" the hold, offset, or netting calculations would also result in the payment of money from HHS to the Liquidators. *Cf. Bowen,* 487 U.S. at 910, 108 S.Ct. 2722. Therefore this Court does not have jurisdiction over the offset claim.

## B. Risk Adjustment Claim

The Liquidators seek a declaratory judgment that HHS' 2015 "[r]isk [a]djustment methodology, charges, and any attempt to collect those charges are arbitrary, capricious, and an abuse of discretion" and "an order enjoining HHS ... from any attempt to collect [r]isk [a]djustment charges." FAC ¶¶ 151(e), 153(c); *see also id.* ¶ 145(f). Notably, the Liquidators challenge the 2015, but not the 2014, risk adjustment calculation. HHS assessed CoOportunity approximately $22 million in risk adjustment charges for the 2015 benefit year. *See id.* ¶ 126; Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., Summary Report on Transitional Reinsurance Payments and Permanent Risk Adjustment Transfers for the 2015 Benefit Year (June 30, 2016), https://www.cms.gov/CCIIO/Programs-and-Initiatives/Premium-Stabilization-Programs/Downloads/June-30-2016-RA-and-RI-Summary-Report-5CR-063016.pdf.

### 1. The Liquidators' position

The Liquidators assert the 2015 risk adjustment amount is arbitrary and capricious because the calculation resulted in "[r]isk [a]djustment charges for the brief period of [CoOportunity's] operation in 2015 represent[ing] over half of the premi-

ums collected for the same time period." FAC ¶ 127.

### 2. HHS' position

HHS asserts the Liquidators' risk adjustment claim is not redressible. If HHS does owe the CoOportunity estate money for an improper risk adjustment calculation, HHS contends it has collected or will collect these funds and will have distributed the funds to other issuers before the Liquidators will be able to obtain relief. ECF No. 64 at 31–32.

### 3. Analysis

Other ACA plaintiffs have raised declaratory relief claims in the Court of Federal Claims. In two cases, the Court of Claims has denied jurisdiction over these claims. Plaintiffs Health Republic and Land of Lincoln sought injunctions requiring HHS to make 3Rs program payments. Compl. 24, *Health Republic Ins. v. United States*, No. 1:16–cv–259, ECF No. 1 (Fed. Cl. Feb. 24, 2016) (requesting consequential damages, special damages, and "injunction requiring Defendant to pay all amounts for 2014 and 2015 owed to Plaintiff and the Class under Section 1342 of the Affordable Care Act"); Compl. 45, *Land of Lincoln Mut. Health. Ins. v. United States*, No. 1:16–cv–744, ECF No. 1 (Fed. Cl. June 23, 2016) (requesting the Court order the government to fulfill and fully satisfy its obligations for the 2015 and 2016 risk corridors payments within 30 days of an order in plaintiff's favor). In *Health Republic*, the Court of Claims denied jurisdiction over the portion of Health Republic's claim for "consequential, special, or other damages resulting from defendant's nonpayment; declaratory and injunctive relief; [and] prejudgment and postjudgment interest" finding the court lacked jurisdiction to award equitable relief. 129 Fed.Cl. at

769. In *Land of Lincoln*, the Court of Claims also denied jurisdiction over the request for declaratory relief because "the relief sought is not necessarily derivative from or attendant to any money judgment that might issue, but rather would turn on future developments." 129 Fed.Cl. at 99. In *Moda Health Plan Inc. v. United States*, the Court of Claims found it had jurisdiction over a qualified health plan issuer's [8] claims seeking damages for the unpaid portions of the 2014 and 2015 risk corridors payments. 130 Fed.Cl. at 448–49, 451–53 (Fed. Cl. 2017).

Unlike the claim in *Health Republic* but like that in *Moda Health Plan*, the Liquidators' claim is targeted to a specific year of risk adjustment payments—a year HHS has calculated—rather than a challenge to the entire scheme of risk adjustment (risk corridors) payments. And unlike in *Land of Lincoln*, the Liquidators' risk adjustment claim does not "turn on future developments." 129 Fed.Cl. at 99; *cf. Bowen*, 487 U.S. at 905, 108 S.Ct. 2722 (recognizing the Court of Claims' inability to remedy the State's challenge given the "complex ongoing relationship between the parties"). In seeking a ruling that the 2015 benefit year risk adjustment methodology was improper, the Liquidators seek to remedy this alleged harm by requiring HHS to "re-do" the calculation under a proper method. By challenging a single year of risk adjustment payments, the Liquidators demonstrate their desire for HHS to recalculate the risk adjustment payment and, based on their allegations, reduce the risk adjustment payment. A money judgment in favor of the CoOportunity estate would adequately address the Liquidators' claim. The Court of Claims could provide

---

**8.** A qualified health plan is a certified plan, meeting all the benefit and cost-sharing standards under the ACA. *See* 42 U.S.C. § 18021 (defining qualified health plan). Qualified health plan issuers can be eligible for the 3Rs program. *See* 42 U.S.C. § 18061(b)(1) (reinsurance); *id.* § 18062(a) (risk corridors); *id.* § 18063(c) (risk adjustment).

the Liquidators adequate relief. *See Christopher Vill.*, 360 F.3d at 1328 (noting a party may not circumvent Court of Claims jurisdiction "where the thrust of the suit is to obtain money from the United States" (quoting *Consol. Edison*, 247 F.3d at 1385)); *Moda Health Plan*, 130 Fed.Cl. at 454–62 (holding section 1342 requires full payments to issurers and granting summary judgment in the insurer's favor as to liability for the risk corridors payments). Therefore this Court does not have jurisdiction over the Liquidators' risk adjustment claim because an adequate remedy exists in the Court of Federal Claims.

## C. Choice-of-Law Claim

The Liquidators request a declaratory judgment "[t]hat Iowa law applies and controls the priority of all claims against the CoOportunity [e]state, including the federal government's claims as asserted by Defendants." FAC ¶ 151(a); *see also id.* ¶ 145(a).

### 1. The Liquidators' position

The Liquidators urge the Court to find they "have alleged sufficient facts showing that Iowa law governs the liquidation process and the priority for the payment of claims in the CoOportunity liquidation." ECF No. 71 at 18. The Liquidators assert state law applies as dictated by the McCarran–Ferguson Act, which "reverse-preempts" federal law in the area of policyholder interest in insurance litigation. *Id.* at 18–19 (citing 42 U.S.C. § 18041(d); *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 504–06, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)). The Liquidators cite the loan agreement in favor of their position that state insurance law takes priority over federal law: "Borrower must immediately repay any unused Loan Funds to Lender following the resolution of any outstanding debts and run out of outstanding claim obligations, consistent with State Insurance Laws." *Id.* at 20 (quoting Loan Agreement § 15.3(c), ECF No. 23).

### 2. HHS' position

HHS claims this Court lacks jurisdiction because a ruling would amount to an advisory opinion, not binding on the United States government. ECF No. 64 at 32–34. HHS alleges the Liquidators "fail to identify any actual controversy that turns on whether the Court applies state or federal law." ECF No. 74 at 20. As to the merits, HHS points to the historical supremacy of federal law. ECF No. 64 at 34–35 ("The Supreme Court 'has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs.'" (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979))). HHS also notes the language of the loan agreement between the parties, which provides "the laws and common law of the United States [govern], including without limitation such regulations as may be promulgated from time to time by HHS, without regard to any conflict of laws statutes or rules, and by the laws of the States of Iowa and Nebraska to the extent the same do not conflict with applicable Federal law." Loan Agreement § 19.2, ECF No. 24.

### 3. Analysis

Unlike the Liquidators' other two claims, the "choice of law" claim is equitable in nature and the Court of Federal Claims thus cannot provide an adequate remedy. Because the claim is also nonmonetary in nature, this Court has subject-matter jurisdiction over the Liquidators' choice-of-law claim under the APA. 5 U.S.C. §§ 702, 704. However, the Court does not have jurisdiction over this claim because issuing a decision on the choice-of-law claim—detached from any underlying claims—would be tantamount to an advisory opinion.

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III § 2. The Court must determine whether a party has standing, which "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 1389, 188 L.Ed.2d 392 (2014). This inquiry consists of three elements: an actual or imminent injury, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Liquidators, as the party invoking jurisdiction, bear the burden to prove standing. *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014).

This Court is prohibited from issuing advisory opinions. *See* U.S. Const. art. III § 2. For a case to be justiciable and not an advisory opinion, the court must consider "whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (omission in original) (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). A party seeking solely a declaratory judgment bears the burden of proving an actual controversy exists. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

"One kind of advisory opinion is an opinion 'advising what the law would be upon a hypothetical state of facts.'" *Pub. Water Supply Dist. No. 8 of Clay Cty. v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). A hypothetical case "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *KCCP Tr. v. City of N. Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005) (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)). "Because the test to determine the existence of a 'substantial controversy' is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis." *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993).

The Liquidators' claim requests an advisory opinion.[9] They do not present a "substantial controversy" in asking this Court to determine whether the federal government, as a creditor of CoOportunity, must follow the Iowa state court liquidation order and Iowa law. Absent an actual controversy properly before this Court, it may not "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (Federal Declaratory Judgment Act of 1934). "Without jurisdiction the court cannot proceed at all in any cause ... and when [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514, 7 Wall. 506, 19 L.Ed. 264 (1868)).

9. The Court does not rest this conclusion upon the McCarran–Ferguson Act. Even if the McCarran–Ferguson Act applied to the ACA, the Court is without power to answer this preemption question absent a case or controversy.

## V. ORDER

The Court grants HHS' Motion to Dismiss. An adequate remedy exists to address the Liquidators' offset claim and their claim challenging the 2015 risk adjustment calculation in the Court of Federal Claims. The Liquidators' choice-of-law claim requests an advisory opinion.

**IT IS ORDERED** that Defendants' Motion to Dismiss, ECF No. 62, is **GRANTED.** The case is dismissed for lack of jurisdiction.